UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEVEN NADILE,

    Plaintiff,

v.                                                                      Case No. 8:19-cv-9-T-CPT

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.
_____/

**O R D E R**

The Plaintiff, proceeding *pro se*, seeks judicial review of the Commissioner's denial of his claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded for further proceedings.

I.

The Plaintiff was born in 1966, has a limited education, and has past relevant work experience as a telemarketer. (R. 35). In October 2016, the Plaintiff applied for DIB and SSI, alleging disability as of April 3, 2015, due to hypertension, schizophrenia, osteoarthritis, rheumatoid arthritis, plantar fasciitis, bipolar disorder, severe depression, panic attacks, post-traumatic stress disorder, and a fractured

tailbone. (R. 335-36, 350-65, 387). The Social Security Administration (SSA) denied his applications both initially and on reconsideration. (R. 243-48, 251-60).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on August 15, 2017. (R. 134-66). The Plaintiff was not represented at that hearing and testified on his own behalf. (R. 141-58). A vocational expert (VE) also testified. (R. 159-64).

In a decision dated November 1, 2017, the ALJ found that the Plaintiff: (1) met the insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since his alleged onset date of April 3, 2015; (2) had the severe impairments of obesity, depression, anxiety, bipolar disorder, degenerative disc disease, and a history of a fractured coccyx; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform light work, except—of particular relevance here—was limited to simple, routine, repetitive job tasks with no fast-paced production or quota-driven work;[1] and (5) based in part on the VE's testimony, could not perform his past relevant work but was capable of performing other jobs that exist in significant numbers in the national economy— namely, small parts assembler, office helper, and copy machine operator. (R. 24-36).

---

[1] The ALJ also found that the Plaintiff could only occasionally climb ladders, scaffolds and ropes; frequently climb stairs and ramps, stoop, kneel, crouch, and crawl; and should not have any interaction with the public, and only occasional interaction with coworkers or supervisors. (R. 29).

In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 36).

The Plaintiff submitted correspondence to the Appeals Council disputing the ALJ's decision (R. 322-34), but the Appeals Council denied the Plaintiff's request for review (R. 7-12). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4).[3] Under this process, an ALJ must determine

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that he cannot perform the work identified by the Commissioner. *Id.* In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

4

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

III.

The Plaintiff contends on appeal that the ALJ's decision denying him benefits is incorrect and full of factual errors, and that the Appeals Council did not properly consider his request for review. (Doc. 19). In support of these contentions, the Plaintiff includes with his appeal the correspondence he sent to the Appeals Council, in which he challenged virtually all of the ALJ's statements and findings. *Id.* at 2-11. The Commissioner counters that the Plaintiff's arguments are without merit and that the ALJ's decision is supported by substantial evidence. (Doc. 21).

The Court has evaluated the record as a whole and, while it cannot feasibly address all of the Plaintiff's sundry assertions, it finds that certain of his claims of error have merit, such that reversal and remand are warranted. In particular, the Court concludes that the ALJ's failure to address an apparent conflict between the VE's

5

testimony and the Dictionary of Occupational Titles (DOT)[4] requires reversal. The Court also finds that the ALJ's evaluation of the medical evidence is likewise flawed, leaving the Court with significant questions about whether the ALJ's decision is supported by substantial evidence.

A.

As noted above, at step five of the sequential evaluation process, the burden of proof temporarily shifts to the Commissioner "to show that 'there is other work available in significant numbers in the national economy that the claimant is able to perform'" despite his impairments. *Sampson*, 694 F. App'x at 734 (quoting *Jones*, 190 F.3d at 1228); *see also* 20 C.F.R. §§ 404.1560(c), 416.960(c) ("[T]o support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do . . .").

To carry this burden, the Commissioner may "take administrative notice of reliable job information available from various governmental and other publications," including the DOT and other sources set forth in the Regulations. 20 C.F.R. §§ 404.1566(d), 416.966(d). The Regulations also permit the Commissioner to predicate his decision at step five on information supplied by a VE. *Id.* at §§ 404.1566(e), 416.966(e); *Phillips*, 357 F.3d at 1240. "A [VE] is an expert on the

---

[4] The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.

kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

"When the ALJ uses a [VE], the ALJ will pose hypothetical question(s) to the [VE] to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Id*. While the ALJ may rely on the VE's response to such hypotheticals, the ALJ "has an affirmative obligation to identify any 'apparent' conflict [between the VE's testimony and the DOT] and to resolve it." *Washington*, 906 F.3d at 1362 (citing Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000)). An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE." *Id*. at 1365. Instead, "[a]t a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*. "Apparent" in this context is "taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT." *Id*. at 1366.

The ALJ's duty to take notice of and resolve apparent conflicts exists both during and after the hearing and does not depend on whether they are raised by a party. *Id*. at 1363. "The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Id*. at 1362.

In this case, the ALJ posed the following hypothetical to the VE:

ALJ: Okay. Now if we were to assume a hypothetical individual with the claimant's age, education[,] past relevant work[, and restrictions, including the limitation] to simple, routine, repetitive job tasks with no

7

fast-paced production or quota-driven work. . . Could such an individual do their past work?

VE: No, Your Honor.

ALJ: Are there any jobs such a person could perform?

VE: There are, Your Honor. Such an individual could work as a small parts assembler, [DOT #]706.684-022, light, SVP[5] of 2, over 200,000 nationwide. . . . Such an individual could work as an office helper, [DOT #]239.567-010, light, SVP of 2, over 100,000 nationwide. Such an individual could work as a copy machine operator, [DOT #]207.685-014, light, SVP of 2, over 6,000 nationwide. . . .

ALJ: Is this a representative sampling of the jobs?

VE: Yes, Your Honor.

VE: And is your testimony consistent with the DOT?

VE: It is, Your Honor.

(R. 160-62).

In her decision, the ALJ accepted the VE's testimony and, without explanation or analysis, found it consistent with the DOT. This was error.

The DOT makes clear that all three jobs identified by the VE—small parts assembler, office helper, and copy machine operator—require a reasoning level of two. DOT #706.684-022, 1991 WL 679050 (small parts assembler); DOT #239-567.010,

---

[5] SVP stands for "specific vocational preparation" and is defined under the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dept. of Labor, DOT, Appendix C: Components of the Definition Trailer, 1991 WL 688702 (G.P.O. 4th ed. 1991). An SVP of 2 requires training of "[a]nything beyond short demonstration up to and including 1 month." Id.

8

1991 WL 672232 (office helper); DOT #207.685-014, 1991 WL 671745 (copy machine operator). Reasoning levels measure a claimant's ability to engage in certain basic functions related to education, and require the claimant to be capable of carrying out instructions and perform mental tasks. DOT, App. C (4th ed. 1991), 1991 WL 688702. Reasoning levels range from one to six, with one being the lowest and six being the highest. *Id.*

Here, according to the DOT, a reasoning level of two mandates that an individual have the ability to apply a "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to deal "with problems involving a few concrete variables in or from standardized situations." *Id.* By contrast, a reasoning level of one only necessitates that an individual have the capacity to apply "a commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

From these DOT descriptions, it is not clear that a person with the Plaintiff's mental limitations to simple, routine, repetitive job tasks would be able to successfully carry out the duties of a small parts assembler, office helper, or copy machine operator. While the Eleventh Circuit has yet to address this specific issue in a published decision in the wake of *Washington*, it has found, in an unpublished decision, that "there is at least 'apparently' a conflict between an employee limited to 'simple, routine tasks' and one able to 'deal with problems involving several concrete variables [i.e., a reasoning level of three].'" *Johnson v. Comm'r of Soc. Sec.*, 782 F. App'x 875, 878 (11th Cir. 2019)

(per curiam) (relying on *Washington*).[6] In *Johnson*, the Court reversed and remanded the case so that the ALJ could satisfy his "affirmative obligation to investigate and resolve this apparent conflict." *Id.* (internal quotation marks omitted).

Most district courts in this Circuit post-*Washington* have also found an apparent conflict when an ALJ's hypothetical question posed to the VE limits a claimant to simple work and the VE then identifies representative jobs for the claimant that have reasoning levels of two or three. *See, e.g., Howard v. Comm'r of Soc. Sec.*, 2019 WL 4738137 (M.D. Fla. Sept. 27, 2019) (vacating and remanding where the VE named jobs with reasoning levels of two and three and finding an apparent conflict between those reasoning levels and the ability to understand, remember, and carry out only simple instructions); *Salermo v. Saul*, 2019 WL 4595157, at *3 (M.D. Fla. Sept. 19, 2019) (recognizing Eleventh Circuit's broad definition of term "apparent" in *Washington* and explaining "[t]he DOT states that, unlike reasoning level 1, reasoning level 2 requires the ability to carry out detailed instructions. That appears to be inconsistent with simple work."); *Saffioti v. Comm'r of Soc. Sec.*, 2019 WL 1513354, at *3 (M.D. Fla. Apr. 8, 2019) (finding an apparent conflict between the DOT and the VE's testimony, where the VE opined that the plaintiff with a restriction to simple

---

[6] In a recent unpublished, *per curiam* decision, the Eleventh Circuit stated that it "has not yet decided in a published opinion whether a limitation to simple, routine repetitive work is inconsistent with a job that requires a general education development reasoning level of three." *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019). The Court determined in *Wooten* that it did not need to resolve this question because one of the three jobs the ALJ identified in that case had a reasoning level of one, which was consistent with the plaintiff's RFC and thus rendered any such error harmless. *Id.*

10

instructions could perform jobs with a reasoning level of two); *Borroto v. Comm'r of Soc. Sec.*, 2019 WL 488327, at *9-10 (M.D. Fla. Jan. 8, 2019) (observing it to be apparent "that a job requiring someone to carry out 'detailed' instructions [i.e., a job with a reasoning level of two] or '[d]eal with problems involving several concrete variables' [i.e., a job with a reasoning level of three] would conflict with a limitation to "simple, routine tasks"), *report and recommendation adopted*, 2019 WL 290599 (M.D. Fla. Jan. 23, 2019); *Liao v. Berryhill*, 2019 WL 2254961, at *1 (S.D. Fla. Feb. 28, 2019) (reversing Commissioner's decision where, in response to the ALJ's query regarding a claimant limited to "simple, routine, repetitive tasks, or unskilled work," the VE supplied three occupations with a reasoning level of three and "the ALJ neither identified nor explained this conflict between the VE's testimony and the DOT").[7]

As with the above-cited cases, the record here sheds no light on the seeming discrepancy between the three jobs denominated by the VE and the respective reasoning requirements for those positions. Neither the VE nor the ALJ took notice of, much less resolved, this apparent inconsistency at the hearing or anytime thereafter. Thus, the Count concludes that, at the very least, the ALJ should have addressed the matter given the dictates of *Washington*.

This deficiency is compounded by the fact that the ALJ did not meaningfully allow the Plaintiff—who, as noted above, was unrepresented—to question the VE. Instead, while the Plaintiff was attempting to examine the VE as to the mental capacity

---

[7] *But see Buckwalter v. Saul*, 2019 WL 4277487, at *12 (S.D. Fla. Sept. 10, 2019) (finding no conflict between reasoning levels two and three and a limitation to unskilled work).

necessary to perform the jobs identified by the VE, the ALJ interjected and disrupted that inquiry. (R. 162-64). Dissatisfied with how the Plaintiff was phrasing his questions, the ALJ ultimately cut him off, stating: "I think I've covered it all. . . . I've given one hypothetical where there is jobs and I've given one hypothetical where there is no. And I've really taken into . . . consideration, you know, everything." (R. 164). The ALJ then precluded the Plaintiff from conducting any further examination of the VE and closed the hearing. *Id.*

The Plaintiff's lack of opportunity to challenge the VE's testimony and to explore the apparent inconsistency between the Plaintiff's mental limitations and the reasoning requirements of the three identified jobs further undermines the ALJ's vocational determination. *See Gordon v. Astrue*, 249 F. App'x 810, 813 (11th Cir. 2007) (implying due process may be violated where the ALJ denies a claimant a "meaningful opportunity" to cross-examine the VE); *Bogan v. Comm'r of Soc. Sec.*, 2017 WL 3393568, at *6 (M.D. Fla. Aug. 8, 2017) (finding the ALJ's actions prejudiced the plaintiff's ability to meaningfully cross-examine VE thereby warranting remand, where the plaintiff did not understand process of questioning the VE nor his ability to cross-examine the VE, and the ALJ did not apprise him of this right); *Marin v. Comm'r of Soc. Sec.*, 535 F. Supp. 2d 1263, 1265 (M.D. Fla. 2008) (finding prejudice where the ALJ prohibited the claimant from asking the VE any questions other than hypotheticals).

B.

In light of the above, the Court need not address the Plaintiff's myriad remaining claims of error. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised); *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record). That said, several of the ALJ's statements are concerning and dictate that the ALJ should re-assess the medical evidence on remand.

As an initial matter, the ALJ found at step two that the Plaintiff's tinnitus and headaches were nonsevere in part because the Plaintiff only took ibuprofen to treat those conditions. (R. 27). As the Plaintiff explained at the hearing, however, he is a recovering alcoholic and drug addict and cannot take narcotics at the residential treatment facility where he lives. (R. 143, 147). The Commissioner acknowledges this error by the ALJ but claims it is harmless because other unspecified evidence supports the ALJ's finding. (Doc. 21 at 9). The Court is unpersuaded by this contention.

In addition, the ALJ gave "significant weight" to the opinion of the Program Director from the Plaintiff's residential treatment facility, finding it "honest and consistent with the medical record." (R. 33). The ALJ nonetheless ignored the Program Director's statement that the Plaintiff's tinnitus "disrupts his sleep" (R. 423), even though the Program Director apparently considered this impairment severe enough to mention it.

The ALJ's selective reading of the Program Director's evaluation of the Plaintiff extends to other areas as well. For example, the ALJ stated that the Program

13

Director "denies that [the Plaintiff] is prescribed or uses a cane" (R. 30), yet the Program Director's assessment contains no such blanket assertion. Instead, the Program Director stated only that the Plaintiff was not prescribed a cane and did not use a cane *at the residential treatment facility*. (R. 428).[8]

In addition, despite ostensibly crediting the Program Director's opinion, the ALJ did not provide any meaningful explanation as to why she rejected certain portions of the Program Director's evaluation (e.g., her determination that that the Plaintiff cannot stand for more than ten minutes or walk without stopping for more than ten minutes, and also cannot kneel, squat, or bend repeatedly). (R. 427). Such limitations are inconsistent with the ALJ's RFC assessment and, at the very least, should have been addressed. In sum, given the issues outlined herein, the Court directs that the ALJ reassess the entire record on remand.

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is reversed and remanded for further proceedings before the Commissioner.

2. The Clerk is directed to enter Judgment in the Plaintiff's favor and to close the case.

---

[8] The record reveals that the Plaintiff did, in fact, have a prescription for a cane (R. 77), which was apparently submitted to the Appeals Council following the ALJ's decision. The Appeals Council "did not consider" that evidence. (R. 8).

DONE and ORDERED in Tampa, Florida, this 24th day of March 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record
Any unrepresented party